Dear Mr. McNeill:
This letter is in response to your request for an opinion concerning the payment of interest on cash bonds and protested sales tax payments received by the Director of Revenue. Your questions are as follows:
 1. When cash bonds are refunded to taxpayers, is the Department required to pay interest?
 (a) If the Department is required to pay interest, is the Department required to calculate interest at the current rate, at the rate earned or at an averaged rate?
 (b) If the taxpayer posts a cash bond and subsequently has a delinquency for the entire amount of the bond, does the taxpayer forfeit the interest as well as the cash bond?
 (c) If the taxpayer forfeits a portion of the cash bond, is the Department required to refund the interest earned on the remaining balance from the date the bond was posted, or is it required to pay interest earned from the forfeiture date?
 2. As to the payment of interest on protest payments:
 (a) Is there a conflict between Mo. Rev. Stat. § 30.240 and § 144.700
(Supp. 1984)? Mo. Rev. Stat. § 30.240 states that unless otherwise provided by law, interest shall be credited to the general revenue and Mo. Rev. Stat. § 144.700 (Supp. 1984), states that interest shall be refunded to the taxpayer if the taxpayer prevails.
 (b) Does the taxpayer "prevail" under Mo. Rev. Stat. § 144.700 if he settles with the Department, or must the taxpayer go to the Administrative Hearing Commission to "prevail" in order to obtain interest on a refund of taxes paid under protest?
 (c) If the taxpayers are entitled to interest on the protested payments, is the Department required to pay interest on (i) general revenue monies, (ii) local monies or (iii) both?
 (d) If the taxpayers are entitled to interest, should interest be paid at the current rate, the rate at which the interest was earned, or some other rate?
Your first series of questions deals with cash bonds deposited by applicants for retail sales licenses or licensees required to file such a bond by the Director pursuant to Section 144.087, RSMo. Your second series of questions deals with protest payments received from taxpayers on tax imposed under the Missouri State Sales Tax Law or Use Tax Law pursuant to Section 144.700, RSMo.
The same questions were raised and dealt with in a prior opinion of this office, Opinion Letter No. 27, issued March 31, 1981, to Ray S. James, then Director of Revenue. In that opinion, we noted that both cash bonds and protest payments were maintained in accounts by the Director of Revenue rather than the State Treasurer, inferring thereby that such monies did not constitute funds belonging to the state. As such, in the absence of any legislative direction, we opined that interest earned on such funds during the time they were in the custody of the Director of Revenue were to be disposed of in the same manner as the principal. That is, all interest earned on each cash bond along with the bond itself would be returned to the taxpayer upon compliance with the provisions of the Sales Tax Act, or be available to the state for satisfaction of all taxes owed upon default by the taxpayer. With respect to protest payments, the principal and all interest earned while held in trust was to be distributed to the prevailing party in the underlying tax dispute. We also noted the language of Section 161.273, RSMo 1978, which created a right of review in the Administrative Hearing Commission for any taxpayer aggrieved by a final decision of the Director of Revenue. Since this covered a refusal by the Director to refund sales tax paid under protest, the language in Section 161.273 allowing interest at the rate of six percent per annum upon any amount found to be wrongfully collected or erroneously paid was determined to be applicable when a protesting taxpayer appealed successfully to the Administrative Hearing Commission.
The legislature has made several key changes in these statutes since our earlier opinion. Most importantly, cash bonds and protest payments are no longer held in special accounts by the Director of Revenue. Section 144.087.2, as enacted by Senate Committee Substitute for Senate Bills Nos. 669, 700 and 737, Eighty-Third General Assembly, Second Regular Session, now requires all cash bonds to be deposited into the state General Revenue Fund under the care of the State Treasurer. Refunds can be made only from funds appropriated for that purpose by the General Assembly. There is no specific provision regarding interest.
It is well established in this state that funds from the state treasury may not be used to pay interest in the absence of a statute authorizing payment. See, State ex rel.Ellsworth Freight Lines, Inc. v. State Tax Commission ofMissouri, 651 S.W.2d 130, 134 (Mo. banc 1983) cert. denied,465 U.S. 1001, 104 S.Ct. 1019, 79 L.Ed.2d 223 (1984),rehearing denied 465 U.S. 1112, 104 S.Ct. 1620,80 L.Ed.2d 148 (1984); Noranda Aluminum, Inc. v. Missouri Department ofRevenue, 599 S.W.2d 1, 5 (Mo. 1980). The rationale behind payment of interest on cash bonds in our earlier opinion was that such bonds were not state monies because they were maintained by the Director of Revenue and not the State Treasurer. That rationale is no longer applicable. The legislature has determined that such bonds do constitute monies belonging to the state by directing that the funds be placed under the care of the State Treasurer and refunded through the appropriation process. Section 30.240, RSMo Supp. 1984, requires the State Treasurer to deposit interest from state monies in General Revenue, unless otherwise provided by law. Since the legislature has not authorized the payment of interest on cash bonds, but only return of the amount of the bond upon compliance with the conditions set forth in subsection 1 of Section 144.087, the Director of Revenue is not permitted to seek interest when presenting warrant requests for the amount of the cash bonds to the Commissioner of Administration and the State Treasurer.
The legislature has also made key changes regarding the payment of state sales and use taxes under protest. In Section144.700.1, RSMo Supp. 1984, the legislature has specified that all revenue received by the Director of Revenue from the state sales and use tax, except the one cent sales and use tax for the School District Trust Fund collected under Section 144.701, RSMo Supp. 1984, is to be deposited in the state General Revenue Fund, including any payment made under protest. Subsection 4 of Section 144.700, RSMo Supp. 1984, states that all taxes paid under protest are to be refunded to the taxpayer, with all interest income derived therefrom, from funds appropriated by the General Assembly for such purpose, if the taxpayer prevails in the underlying dispute with the Director. In addition, Section 621.050, as enacted by Conference Committee Substitute for House Committee Substitute for Senate Committee Substitute for Senate Bill No. 426, Eighty-Third General Assembly, Second Regular Session, the successor to Section 161.273, RSMo 1978, reflects that taxpayers prevailing at the Administrative Hearing Commission are not to receive six percent per annum but are to be paid as specified by Section 144.700, RSMo, where the taxes in question were paid under protest.
Your question on the payment of interest on protest payments is divided into four parts. In answer to question 2 (a), a careful reading of Section 30.240, RsMo Supp. 1984, and Section 144.700, RSMo Supp. 1984, does not reveal any conflict. Section 30.240 requires the crediting of interest earned from state monies to the General Revenue Fund of the state when no other disposition is provided for by law. Subsection 4 of Section 144.700 specifies that all interest income derived from protest payments deposited in the state General Revenue Fund is to be refunded to the taxpayer along with the tax from funds appropriated by the General Assembly for such purpose if the taxpayer prevails in the underlying dispute.
In response to question 2 (b), it must be noted that Section 144.700.2, RSMo Supp. 1984, sets forth a specific procedure for paying state sales or use tax under protest. The taxpayer must submit a protest affidavit to the Director of Revenue within thirty days after payment under protest, and appeal from any decision of the Director of Revenue disallowing the making of the payment under protest to the Administrative Hearing Commission or agree to be bound by a final decision involving the same question in another case presently pending in the courts. Since the taxpayer is required to submit a protest payment in advance of any of these remedies, a decision in the taxpayer's favor at any level must be construed as "prevailing." In our opinion, a taxpayer is entitled to interest income derived from the investment of any tax paid under protest, if funds have been appropriated by the General Assembly for such purpose, when a decision in his favor has been reached, whether it be in settlement with the Department of Revenue, a decision by the Administrative Hearing Commission, or a final decision by a court.
In question 2 (c), you ask if the Department is required to pay interest to prevailing taxpayers on local monies as well as general revenue monies. In responding to this question, it is important to note that Section 144.700, RSMo Supp. 1984, does not provide for payment under protest of local sales tax, only tax imposed under the state sales and use tax, except for the one cent sales and use tax established by Proposition C approved November 2, 1982. This tax for the benefit of the public school districts is dealt with in Section 144.701, RSMo Supp. 1984. Therefore, local sales tax collected by the Director of Revenue cannot be placed in a protest account but must be handled in accordance with the particular statutes under which it was authorized and collected. Unless those statutes call for the payment of interest on refunds, none should be paid.
In question 2 (d), you ask the rate of interest to be paid if the taxpayers are entitled to interest upon return of payments made under protest. Section 144.700.4, RSMo Supp. 1984, does not give a specific rate of interest. Rather, it states: "If the taxpayer prevails, then taxes paid under protest shall be refunded to the taxpayer, with all interest income derived therefrom, from funds appropriated by the general assembly for such purpose." The choice of language is very clear. The legislature did not intend to obligate the state to meet a certain rate of interest on protested amounts, but simply to return to the taxpayer the amount of interest earned on his protest payment during the time that it was retained in the state treasury, if funds have been appropriated by the General Assembly for such purpose.
In view of the discussion above, we have withdrawn Opinion Letter No. 27, issued March 31, 1981, to Ray S. James, then Director of Revenue.
Very truly yours,
 WILLIAM L. WEBSTER Attorney General